Slip Op. 20-32

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAN THO IMPORT-EXPORT JOINT STOCK COMPANY, | |
| Plaintiff, | |
| v. | Before: Claire R. Kelly, Judge |
| UNITED STATES, | Court No. 16-00071 |
| Defendant, | PUBLIC VERSION |
| and | |
| CATFISH FARMERS OF AMERICA ET AL., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's remand redetermination in the eleventh administrative review of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam.]

Dated: March 12, 2020

Andrew T. Schutz, Andrew B. Schroth, and Jordan C. Kahn, of Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for plaintiff Can Tho Import-Export Joint Stock Company.

Joseph H. Hunt, Assistant Attorney General, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, D.C, for defendant. With him on the brief were Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Kara M. Westercamp, Trial Counsel. Of counsel was Ian McInerney, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Court No. 16-00071 Page 2
**PUBLIC VERSION**

James R. Cannon, Jr. and Jonathan M. Zielinski, of Cassidy Levy Kent (USA) LLP, of Washington, D.C., for defendant-intervenors Catfish Farmers of America; America's Catch; Alabama Catfish Inc. d/b/a Harvest Select Catfish, Inc.; Heartland Catfish Company; Magnolia Processing, Inc. d/b/a Pride of the Pond; and, Simmons Farm Raised Catfish, Inc.

 Kelly, Judge:  Before the court is the U.S. Department of Commerce's ("Department" or "Commerce") second remand redetermination in the eleventh administrative review[1] of the antidumping duty ("ADD") order covering certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"), filed pursuant to the court's order in Can Tho Import-Export Joint Stock Company v. United States, 43 CIT __, 415 F. Supp. 3d 1187 (2019) ("Can Tho I").  See Final Results of Redetermination Pursuant to Court Remand Order [in Can Tho I], Dec. 16, 2019, ECF No. 82 ("Second Remand Results"); see also Certain Frozen Fish Fillets from [Vietnam], 81 Fed. Reg. 17,435 (Dep't Commerce March 29, 2016) (final results and partial rescission of [ADD] admin. review; 2013-2014) and accompanying Issues and Decision Memo. for the Final Results of the Eleventh [ADD] Admin. Review; 2013-2014, A-552-801, (Mar. 18, 2016), ECF No. 22-3 ("Final Decision Memo.").  In Can Tho I, the court remanded for further consideration Commerce's decision to deny a separate rate to Can Tho Import-Export Joint Stock Company ("Caseamex" or "Plaintiff").  See Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1195.  Commerce determined, under protest, that Caseamex was entitled to a separate rate, because

---

[1] The eleventh administrative review covers the period dating August 1, 2013 through July 31, 2014 ("POR").  See Final Decision Memo. at 1.

no further evidence exists beyond what it had reviewed in the final determination and first remand redetermination.[2]  See Second Remand Results at 1–2, 4. Defendant-Intervenors Catfish Farmers of America et al. allege that Commerce overlooked record evidence that bears on whether the minority government shareholder may exert control over Caseamex and request the court to again remand the separate rate issue.  See Def.-Intervenors' Opp'n Second Remand Results at 1–5, Jan. 15, 2020, ECF No. 90 ("Def.-Intervenors' Br.").  Defendant and Plaintiff disagree and request the court to sustain the Second Remand Results.  See Def.'s Resp. [Def.-Intervenors' Br.] at 1, 4–5, Jan. 30, 2020, ECF No. 97 ("Def.'s Br."); see also Pl.'s Reply [Def.-Intervenors' Br.] at 1–4, Jan. 30, 2020, ECF No. 94 ("Pl.'s Br.").  For the reasons that follow, the court sustains Commerce's Second Remand Results.

## BACKGROUND

The court assumes familiarity with the facts as set forth in its previous opinion, see Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1189–90, and recounts those relevant to the court's review of the Second Remand Results.  In the eleventh administrative review, Caseamex submitted a separate rate application ("SRA").  See Final Decision Memo. at 28; see also Resp. Grunfeld Desiderio Lebowitz Silverman Klestadt, LLP to Sec. of Commerce Pertaining to Caseamex [SRA], CD 34–36, bar codes 3244388-01–

---

[2] By adopting a position forced upon it by the Court "under protest," Commerce preserves its right to appeal. See Viraj Grp., Ltd. v. United States, 343 F. 3d 1371, 1376 (Fed. Cir. 2003).

03 (Dec. 1, 2014) ("Caseamex's SRA").[3] Commerce denied Caseamex's SRA, based on findings made in the tenth administrative review. See Final Decision Memo. at 28–30. Given that the court remanded Caseamex's separate rate in the tenth administrative review in An Giang Fisheries Import and Export Joint Stock Co. v. United States, 41 CIT __, __, 203 F. Supp. 3d 1256, 1294–95 (2017), Commerce sought a remand in the eleventh administrative review, see Joint Status Report & Proposed Br. Sched., Oct. 12, 2018, ECF No. 41, which this court granted. See Order, Oct. 15, 2018, ECF No. 42. On remand and in consideration of record evidence, including Caseamex's 2012 Articles of Association ("AoA"), Commerce found that the minority government shareholder[4] retained potential influence over the selection of management and Caseamex's day-to-day operations. See Final Results of Redetermination Pursuant to Ct. Remand at 7–20, Apr. 4, 2019, ECF No. 51 ("First Remand Results"). As a result, Commerce determined that Caseamex failed to demonstrate autonomy and did not qualify for a separate rate. See generally id.

---

[3] On June 20, 2016, Defendant filed on the docket the indices to the public and confidential administrative records of this review at ECF Nos. 22-4–5. Subsequently, on April 15, 2019, Defendant filed indices to the public and confidential first remand record at ECF Nos. 53-2–3, and on January 3, 2020, Defendant also filed indices to the public and confidential second remand record at ECF No. 88-2–3. All further references to documents from the administrative records are identified by the numbers assigned by Commerce in these indices.

[4] The minority government shareholder is the [[ ]]. Caseamex's SRA at 13.

Court No. 16-00071                                                                                        Page 5
**PUBLIC VERSION**

In Can Tho I, the court concluded that the record evidence did not support Commerce's view that the minority government shareholder could circumvent the restrictions and limitations imposed by the AoA. Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1192–95. The court explained that Commerce erroneously assumed that, because Mr. X[5] was appointed General Director of Caseamex by the minority government shareholder prior to the POR, he remained beholden to that minority government shareholder throughout the POR. Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1193–95. The court faulted Commerce for failing to consider the record evidence, namely the AoA, which establishes that a minority shareholder, such as the minority government shareholder, has no power to effectuate change. Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1193–94. Further, on review of the AoA and the share allocations of Mr. X, the minority government shareholder, and Caseamex employees, the court noted that Mr. X and his employees, to the extent they are beholden to him, could block appointments of managers and directors by preventing the minority government shareholder from reaching the 65% share threshold required for approval. Id. Given that Commerce "offer[ed] no explanation why it is reasonable to conclude that Mr. X[] was beholden the government, when the AoA precludes the minority government shareholder from exercising any independent influence on the Board of Directors or any manager of Caseamex, including Mr. X[,]" the court

---

[5] Mr. X refers to [[          ]]. See First Remand Results at 8; see also Caseamex's SRA at Ex. 1.

remanded for further consideration and explanation Commerce's denial of Caseamex's separate rate. Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1195.

Commerce filed its Second Remand Results under respectful protest, as it disagrees with the court's holding in Can Tho I that the record evidence did not support Commerce's determination denying Caseamex a separate rate. See id. at 7. Nonetheless, Commerce finds that there is no further evidence than what it had reviewed in the First Remand Results to show how the minority government shareholder was in a position to control, or to potentially control, Caseamex. Id. at 1–2. Therefore, Commerce assigned Caseamex a separate rate. Id. at 2.

## JURISDICTION AND STANDARD OF REVIEW

The court continues to have jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii), and 28 U.S.C. § 1581(c) (2012), which grant the court authority to review actions contesting the final determination in an administrative review of an ADD order.[6] The court will sustain Commerce's final determinations if they are supported by substantial evidence and are in accordance with law. See 19 U.S.C. § 1561a(b)(1)(B)(i).

---

[6] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Court No. 16-00071  Page 7
**PUBLIC VERSION**

## DISCUSSION

Defendant-Intervenors challenge Commerce's Second Remand Results as unsupported by substantial evidence.[7] See Def.-Intervenors' Br. at 1–5.[8] Specifically, Defendant-Intervenors contend that Commerce failed to address record evidence that demonstrates the minority government shareholder was directly involved in the daily operations of Caseamex through a Member of the Board of Management ("BOM"), Ms. Y.[9] See id. at 1–4. Defendant and Plaintiff counter that Commerce reasonably rejected this argument in the underlying administrative proceeding. See Def.'s Br. at 4–5; Pl.'s Br. at 1–4. For the reasons that follow, Commerce reasonably determined that the minority government shareholder could not influence the appointment of managers and directors and the day-to-day operations of Caseamex through Ms. Y.

When Commerce investigates subject merchandise from a non-market economy ("NME"), such as Vietnam, Commerce presumes that the government

---

[7] The court reviews the substantiality of the evidence "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (internal quotes omitted).

[8] Defendant-Intervenors also state that Commerce's Second Remand Results are not in accordance with law, see Def.-Intervenors' Br. at 5; however, they do not elaborate on that claim of error.

[9] Ms. Y refers to [[          ]], and she is the [[          ]]. Caseamex's SRA at Exs. 9, 18.

controls export-related decision-making of all companies operating within that NME. Import Admin., [Commerce], Separate-Rates Practice and Application of Combination Rates in Antidumping Investigations involving [NME] Countries, Pol'y Bulletin 05.1 at 1 (Apr. 5, 2005), available at http://enforcement.trade.gov/policy/bull05-1.pdf (last visited Mar. 4, 2020) ("Policy Bulletin 05.1"); see also Antidumping Methodologies in Proceedings Involving [NME] Countries: Surrogate Country Selection and Separate Rates, 72 Fed. Reg. 13,246, 13,247 (Dep't Commerce Mar. 21, 2007) (background) (stating the Department's policy of presuming control for companies operating within NME countries); Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997) (approving Commerce's use of the presumption). Commerce assigns an NME-wide rate, unless a company successfully demonstrates an absence of government control, both in law (de jure) and in fact (de facto).[10] Policy Bulletin 05.1 at 1–2.[11]

---

[10] Respondents seeking to rebut the presumption of government control submit a separate rate application. Policy Bulletin 05.1 at 3–4.

[11] Commerce examines the following factors to evaluate de facto control: "whether the export prices are set by, or subject to the approval of, a governmental authority;" "whether the respondent has authority to negotiate and sign contracts and other agreements;" "whether the respondent has autonomy from the central, provincial and local governments in making decisions regarding the selection of its management;" and, "whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses." Policy Bulletin 05.1 at 2. With respect to de jure control, Commerce considers three factors:

(footnote continued)

Relevant here, Commerce considers government ownership share in assessing de facto control. Commerce views government majority ownership as actual control, regardless of whether that control is exercised. See, e.g., 1,1,1,2-Tetrafluoroethane from the People's Republic of China [("PRC")]: Issues and Decision Memo. for the Final Determination of Sales at Less than Fair Value [ADD] Investigation at 8, A-570-998, (Oct. 14, 2014), available at https://enforcement.trade.gov/frn/summary/prc/2014-24903-1.pdf (last visited Mar. 4, 2020); Decision Memo. for the Prelim. Determination of the [ADD] Investigation of Carbon and Certain Alloy Steel Wire Rod from the [PRC] at 6–7, A-570-012 (Aug. 29, 2014), available at https://enforcement.trade.gov/frn/summary/prc/2014-21335-1.pdf ("Steel Wire Rod Decision Memo.") (last visited Mar. 4, 2020); see also An Giang Fisheries Import and Export Joint Stock Co. v. United States, 42 CIT __, __, 284 F. Supp. 3d 1350, 1359 (2018) ("Where a majority shareholder has potential control that control is, for all intents and purposes, actual control."). In cases of minority government ownership, Commerce requires additional indicia of control prior to concluding that a respondent company cannot rebut the presumption of de facto control. See, e.g., 53-Foot Domestic Dry Containers from the [PRC]: Issues and Decision Memo. for the Final Determination of Sales at Less Than Fair Value at 48–

---

"an absence of restrictive stipulations associated with an individual exporter's business and export licenses;" "any legislative enactments decentralizing control of companies;" and, "any other formal measures by the government decentralizing control of companies." Id.

Court No. 16-00071 Page 10
**PUBLIC VERSION**

50, A-570-014, (Apr. 10, 2014), available at https://enforcement.trade.gov/frn/summary/prc/2015-08903-1.pdf (last visited Mar. 4, 2020) ("Containers Decision Memo.") (finding de facto control where two government-owned minority shareholders, together, made the government a controlling shareholder according to the respondent company's Articles of Association). Commerce considers the totality of the circumstances for a given period of review and may draw reasonable inferences that the respondent company does not control its export activities. See, e.g., Steel Wire Rod Decision Memo. at 5; see also Containers Decision Memo. at 46–53.

Here, Commerce, after reexamining the record, reasonably determines that there is no evidence indicating that the minority government shareholder controlled, or had the potential to control, Caseamex. Commerce specifically examines whether the minority government shareholder, through Ms. Y, could influence the appointment of managers and directors as well as the day-to-day operations of Caseamex. See Second Remand Results at 6–7. First, Commerce finds that the AoA constrains any influence Ms. Y could exert on the appointment of, for example, Mr. X as General Director, and members to the Board of Directors. Id. at 6.[12] Even though

---

[12] Defendant-Intervenors point to the reappointment of Mr. X as Caseamex's General Director during the POR by the BOM as evidence of the minority government shareholder's influence over Caseamex. See Def.-Intervenors' Br. at 3 (citing Caseamex's Supp. Resp. at Ex. S3-8, First Rem. CD 2–6, bar codes 3782005-01–05

(footnote continued)

Ms. Y, as a Member of the BOM participates in the selection of members to the Board of Directors, any appointment is subject to shareholder approval. See id. Therefore, Commerce reasonably concludes that "just as the [AoA] mitigate the government's potential influence in selecting board members through its status as a minority shareholder, they similarly constrain such decisions by the Management Board." Id. at 6. Second, Commerce does not consider that Ms. Y's position on the BOM would enable the minority government shareholder to control, or to potentially control, the day-to-day operations of Caseamex. See id. at 6–7. Referring to Can Tho I, Commerce explains that Mr. X, not Ms. Y, plays an integral role in Caseamex's operations. Id. at 6. Notably, the AoA charges the BOM with long-term and strategic decision-

---

(June 6, 2014)). Although Ms. Y, as a member of the BOM, was one of the people tasked with that decision, it was not her decision to make alone. Rather, the [[ ]]-member BOM—but not including Mr. X—appoints the General Director by [[ ]]. See Caseamex's SRA at Exs. 9, 10 ([[ ]]). Further, even though [[ ]] of the AoA provides that [[ ]], the appointment of the General Director is subject to shareholder approval. See id. at Ex. 10 ([[

]].

In addition, Defendant-Intervenors do not persuade that because [[
]], Ms. Y has "considerable sway in either retaining or dismissing [Mr. X]." See Def.-Intervenors' Br. at 5. They do not point to record evidence to suggest that the [[ ]] other members of the BOM would follow her voting prerogatives. Rather, by the terms of [[ ]], Ms. Y's vote to retain could be overruled by [[ ]] votes to dismiss. See Caseamex's SRA at Ex. 10.

Court No. 16-00071                                                                                                           Page 12
**PUBLIC VERSION**

making as well as supervision of the General Director,[13] who, unlike the BOM, oversees Caseamex's daily operations.[14] Moreover, the AoA constrains whatever power Ms. Y may potentially wield over Caseamex's operations. Decisions of the BOM are taken by [[         ]], and Ms. Y, as one member of a [[         ]] BOM, including Mr. X, could not surpass the vote threshold to direct decisions of the BOM. See Caseamex's SRA at Exs. 9, 10 ([[         ]]). Commerce reasonably determines that the AoA constrains Ms. Y in her role as a member of the BOM, just as the AoA constrains the minority government shareholder from exercising any control over Caseamex through the Board of Directors or any manager, including Mr. X. Cf. Can Tho I, 43 CIT at __, 415 F. Supp. 3d at 1194–95.

---

[13] [[         ]] of the AoA assigns, inter alia, the following rights and obligations to the BOM: [[



                                                                                      ]]. Further, [[
          ]] requires BOM approval for, inter alia: [[

                                                                 ]]. See Caseamex's SRA at Ex. 10.

[14] Under [[          ]], the General Director, inter alia, [[

                                              ]]. See Caseamex's SRA at Ex. 10.

## CONCLUSION

For the foregoing reasons, the <u>Second Remand Results</u> are supported by substantial evidence and comply with the court's order in <u>Can Tho I</u>, and, therefore, are sustained. Judgment will enter accordingly.

                                                   <u>/s/ Claire R. Kelly</u>
                                                   Claire R. Kelly, Judge

Dated:      March 12, 2020
              New York, New York